# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>  )<br>  v. )<br>  )<br> KYLE P. REYNOLDS, )<br>     Defendant. )<br>  )<br>  ) | C.A. No. 24-cr-12-MRD-PAS |

## MEMORANDUM AND ORDER

Melissa R. DuBose, United States District Judge.

Defendant Kyle Reynolds ("Reynolds") moves this Court to dismiss the indictment against him on the grounds that the charges violate his Second Amendment rights. ECF No. 29. On April 3, 2024, Reynolds was indicted pursuant to 18 U.S.C § 922(g)(1), which penalizes a felon for being in possession of a firearm or ammunition. ECF No. 15. According to Reynolds, the decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 597 U.S. 1 (2022), makes clear that application of § 922(g)(1) violates his Constitutional right "to possess ammunition and firearms that are commonly used for self-defense." ECF No. 29 at 6. He contends that prosecution under § 922(g)(1) improperly burdens his Second Amendment right because it attempts to hold him criminally liable for conduct that is constitutionally protected in a manner that is inconsistent with the nation's history of firearms regulation. *Id.* For the reasons explained below, this Court denies Reynolds' Motion to Dismiss.

I.  BACKGROUND

Reynolds' contested indictment was issued in the wake of an FBI search of his home.  ECF No. 1 at 3–5.  FBI agents executed a search warrant on his home in Middletown, Rhode Island on January 23, 2024, and seized over 1,000 rounds of ammunition.  ECF No. 33 at 2–3.  This forms the basis of Count III, Felon in Possession of Ammunition in violation of 18 U.S.C. § 922(g)(1).  ECF No. 15 at 2.  Counts I and II, Felon in Possession of a Firearm, are based on images Reynolds posted online coupled with testimony from two witnesses who reported that he was in possession of firearms.[1]  ECF No. 15 at 1, ECF No. 33 at 3–8.  The federal statute makes it unlawful for any individual "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . [to] possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  18 U.S.C. § 922(g)(1).  In 2007, Reynolds was charged and later convicted of Assault on a Person over sixty (60) years of age in violation of R.I. Gen. Laws § 11-5-10, a crime punishable by up to five years imprisonment   That statute provides, in part, that "[a]ny person who shall commit an assault and battery upon a person sixty

---

[1] The Government cites to images of firearms posted in 2022 on the application Telegram by a user later identified as Reynolds.  The testimonies include statements from Reynolds' girlfriend who informed police during a domestic dispute call to the residence on January 2, 2024, that Reynolds had ammunition and firearms, and the testimony from another witness who explained that he provided Reynolds with a shotgun in 2021 and an AR-15 rifle in 2022.  The witness confirmed that Reynolds remained in possession of the weapons until about January 15, 2024, when he returned them to the witness.  ECF No. 33 at 3–7.

(60) years of age or older, causing bodily injury, shall be deemed to have committed a felony and shall be imprisoned not exceeding five (5) years . . . ." *Id.* Reynolds pleaded *nolo contendere* to that charge and was sentenced to five years at the ACI, with the first six months to serve, and the balance of fifty-four months suspended with probation. ECF No. 33 at 2.

Reynolds now seeks to dismiss the 2024 indictment by challenging the constitutionality of § 922(g)(1) on the following grounds: (1) the federal statute does not comply with the analysis laid out by the Supreme Court in *Bruen* for firearm regulation, and (2) the federal statute results in a permanent dispossession of firearms contrary to the Second Amendment. ECF No. 29 at 4–7, 15–16. In the alternative, Reynolds makes an as-applied challenge arguing that: (1) his prior conviction does not justify classifying him as a "felon" under § 922(g)(1) because the basis of his prior offense doesn't support a finding that he "poses a credible threat to the physical safety of another," and (2) § 922(g)(1) disregards that the Second Amendment equally affords felons the right to bear arms because they are part of "the people" referenced in the plain text. ECF No. 29 at 8–10, 14–15. The Court considers these arguments in turn.

## II.  LEGAL STANDARD

Rule 12 of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). When raising a constitutional challenge, "a defendant may seek the dismissal of an indictment on the

grounds that the statute authorizing the charges is unconstitutional." *United States v. Fulcar*, 701 F. Supp. 3d 49, 51 (D. Mass. 2023) (citing *United States v. Carter*, 752 F.3d 8, 12 (1st Cir. 2014)). An attack on the constitutionality of a statute "can come in two forms: a facial challenge or an as-applied challenge." *United States v. Worster*, 765 F. Supp. 3d 112, 116 (D.R.I. 2025). "To succeed on a facial challenge, [a] defendant must show 'that the statute lacks any plainly legitimate sweep.'" *Id*. In other words, there is "no set of circumstances exists under which [the statute] would be valid . . . ." *United States v. Stevens*, 559 U.S. 460, 472, (2010). On the other hand, "to succeed on an as-applied challenge, the defendant must only show that the statute is unconstitutional as applied to the circumstances of their case." *Worster*, 765 F. Supp. 3d at 116 (citing *Hightower v. City of Bos.,* 693 F.3d 61, 71–72 (1st Cir. 2012)).

### III.   DISCUSSION

#### A.   § 922(g)(1) aligns with historical traditions of firearms regulations

##### 1.   *Bruen* Analysis of the Federal Statute

The Supreme Court explained in *District of Columbia v. Heller* that, based on both the text and history, there appears to be no doubt that the Second Amendment protects the rights of individuals to keep and bear arms. 554 U.S. 570, 595 (2008). However, the Court noted that the right is not without limits. *Id.; see also id.* at 626 (commenting that "nothing in [their] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons"). In *Bruen*, which Reynolds heavily relies on for his motion, the highest court articulated a two-prong test for courts to apply when assessing the constitutionality of a firearm regulation.

4

597 U.S. at 26. The test looks at whether the regulation is "consistent with the Second Amendment's text and historical understanding." *Id.* The first prong assesses the plain text of the Second Amendment and holds that when the "plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 17. Here, the first prong is satisfied as the right to bear arms is enshrined in the Second Amendment. *Heller*, 554 U.S. at 634–35.

Next, to justify a regulation, the second prong requires the Government to "demonstrate that the [contested] regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. If proven, the court may then hold that the otherwise protected conduct falls outside the scope of the Second Amendment protections and the regulation is constitutional. *Id.* Under the second prong, there are two possible approaches for determining whether a modern firearm regulation is consistent with history and traditions. The first is a "straightforward" approach where the regulation "addresses a general societal problem that has persisted since the 18th Century." *Id.* at 26. The second approach requires the Government to demonstrate that the contested regulation is "relevantly similar" to a historical analogue. *Id.* at 28–29.

The straightforward method is inapplicable here because "the modern federal felony firearm disqualification law, 18 U.S.C. § 922(g)(1), is firmly rooted in the twentieth century and likely bears little resemblance to laws in effect at the time the Second Amendment was ratified." *United States v. Booker*, 644 F.3d 12, 23–24 (1st Cir. 2011). Thus, the court's determination of whether the regulation unduly burdens

5

constitutionally protected conduct depends on whether the federal statute is analogous to regulations that have been implemented throughout the Nation's history. The Supreme Court requires a reviewing court to consider whether the "challenged regulation is consistent with the principles that underpin the Nation's regulatory tradition." *United States v. Rahimi,* 602 U.S. 680, 681 (2024).[2] In *Rahimi*, the court held that "[t]aken together, the surety and going armed laws [of the time] confirm[ed] what common sense suggests: When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." *Id.* at 698.

Here, § 922(g)(1) criminalizes the possession of a firearm or ammunition by a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . ." Applying the same analogical reasoning of *Rahimi* and considering alignment with traditional surety and going armed laws, § 922(g)(1) is constitutional because it "is consistent with the principles that underpin the Nation's regulatory tradition." 602 U.S. at 692. The restrictions imposed by

---

[2] In *Rahimi*, the Court analogized current firearms regulations to the surety and going armed laws of the founding era which were two separate mechanisms used to impose restrictions on firearms. The surety laws, which were well rooted in the common law and "could be invoked to prevent all forms of violence," authorized magistrates to impose bonds on individuals suspected of future misbehavior thus providing a mechanism for preventing violence. *Id.* at 695–96. The other mechanism for imposing firearms restrictions was provided by the going armed laws, which were a subset of the ancient common law prohibition on affrays – that is, conduct involving terrifying others, of which fighting in public was the prototypical example. *Id.* at 697. Under these laws, magistrates could punish individuals who threatened others with firearms by prohibiting them from "riding or going armed, with dangerous or unusual weapons, [to] terrify [ ] the good people of the land." *Id.*

§ 922(g)(1) suggest that those who commit crimes punishable by imprisonment for a term exceeding one year have shown a disregard for laws and a willingness to violate them. In effect, they have demonstrated a tendency of misbehavior and access to a weapon increases the likelihood and suspicion that such an individual would engage in future misbehavior that may result in greater violence.

Accordingly, Reynolds' challenge to the constitutionality of § 922(g)(1) based on the *Bruen* test and *Rahimi* approach must fail because the federal statute is analogous to historical firearms regulations intended to prevent violence by dispossessing individuals who have shown that they pose a threat to another.[3]

### 2. Duration of the dispossession is not permanent

Additionally, Reynolds claims that a permanent dispossession of firearms is unconstitutional pursuant to the Second Amendment. ECF No. 29 at 6-9, 15–16. Reynolds relies on *Rahimi* for this argument. *Id.* at 6–7. He argues that a critical factor in the Court's decision in that case was likely the temporary nature of the dispossession pursuant to § 922(g)(8), which only lasted for as long as the defendant was subject to a restraining order. *Id.* Reynolds argues that here, pursuant to 18

---

[3] Recently, a District Court in the Seventh Circuit held that 18 U.S.C § 922(g)(1) was unconstitutional. *See United States v. Glass*, No. 24-CR-30124-SMY, 2025 WL 2771011 (S.D. Ill. Sept. 29, 2025). There the court explained that the Seventh Circuit has not decided the constitutionality of 18 U.S.C. § 922(g)(1) since *Bruen* but has laid out an analysis that courts should conduct including questions to help focus the analysis. The court in *Glass* engages in a similar analysis as this court, applying the *Bruen* test but presents different historical analogues and finds the regulation does not align with the historical firearms regulation. We are not persuaded by the analysis of that court and note that our decision here is aligned with First Circuit precedent. *See United States v. Torres-Rosario*, 658 F.3d 110 (1st Cir. 2011); *United States v. Booker*, 644 F.3d 12 (1st Cir. 2011).

7

U.S.C. § 921(a)(20),[4] his dispossession is permanent because it can only be removed if the conviction is expunged, set aside, or pardoned. ECF No. 29 at 16. The Government contends that Reynolds is mistaken because the Attorney General has created a process under 18 U.S.C. § 925(c) for convicted felons to petition for a restoration of their right to possess arms. Thus, they claim, Reynold's dispossession is not permanent. ECF No. 33 at 22.

Under 18 U.S.C. § 925(c), a person can apply for relief from the restriction "and the Attorney General may grant such relief" if the applicant can show by their record and reputation that the circumstances that led to the restriction have been resolved and "that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." Here Reynolds' argument that the prior conviction is so far in the past is merely a starting point for him to attempt to seek this relief. He must also show, by his record and reputation since that conviction, that he is not likely to act in a manner that would pose a threat to the safety of another. 18 U.S.C. § 925(c). All to say, Reynolds' dispossession is not permanent because he has a path to lift the restriction.

Because there is a fair and reasonable avenue for Reynolds to seek restoration of his right to keep arms, the argument that the dispossession is unconstitutional because it is permanent necessarily fails.

---

[4] This section of the statute states, in part, that "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter" (referring to 18 U.S.C. chapter 44, firearms statutes including § 922). 18 U.S.C. § 921(a)(20).

### B. The Statute was not unconstitutionally applied to Reynolds

#### 1. Reynolds has been found by a court to pose a credible threat to the safety of another.

Reynolds also argues that § 922(g)(1) has been incorrectly applied to him because he has not been found to be a credible threat. ECF No. 29 at 14–15. Reynolds claims that because he is a non-violent felon who does not pose a credible threat, he is entitled to have his underlying felony classified as one that is so "tame and technical as to be insufficient to justify the ban [on his right to possess firearm] . . . ." ECF No. 29 at 7 (quoting *United States v. Torres-Rosario,* 658 F.3d 110, 113 (1st Cir. 2011)). In support, he presents what he describes as a "dangerousness" standard set out in *Rahimi*, which allows for the temporary disarmament of individuals "found by a court to pose a credible threat to the physical safety of another." ECF No. 29 at 6–7 (quoting *Rahimi,* 602 U.S. at 702). There, as previewed above, the Court recognized that since the early days of common law, governing bodies could disarm individuals who had been "judged dangerous to the Peace of the Kingdome." *Rahimi*, 602 U.S. at 693–94 (citing 14 Car. 2 c. 3, §13 (1662); J. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons From Possessing Arms*, 20 Wyo. L. Rev. 249, 259 (2020)). In *Rahimi*, the defendant was found to be dangerous because he committed "family violence" which was "likely to occur again" and, as such, he posed a "credible threat" to the "physical safety" of another. 602 U.S. at 687. Reynolds acknowledges that courts have also found that drug dealing, crimes involving firearms, and being found by a court to pose a credible threat are all linked to violence and demonstrate a sufficient threat to justify a ban. ECF No. 29 at 10–13. However, he argues that

his prior conviction does not fall into this category of crimes linked to violence. *Id.;  see also Torres-Rosario*, 658 F.3d at 113 (declining to find a Second Amendment violation because the defendant's prior convictions were for serious drug offenses and "drug dealing is notoriously linked to violence"); *Worster,* 765 F. Supp. 3d at 124 (holding the defendant's challenge to § 922(g)(1) failed because his criminal history included multiple drug and firearm related crimes as well as possession of an explosive device and those offenses fell within the *Torres-Rosario* category of crimes which are notoriously linked to violence); *Rahimi*, 602 U.S. at 702 (holding that temporary disarmament of an individual who is "found by a court to pose a credible threat to the physical safety of another" is "consistent with the Second Amendment"). Distinguishing himself from those cases, Reynolds argues that he does not pose a "credible threat" because: (1) his prior felony conviction is not classified as a violent felony under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and (2) because felony assault under Rhode Island law only requires proof of a recklessness *mens rea*. ECF No. 29 at 14–15. On this argument, the Government retorts that, in *Heller*, the Supreme Court clarified that the Second Amendment does allow categorical regulation of firearm possession by classes of persons, which included felons and did not require these restrictions to be imposed on an "individualized, case-by-case basis." ECF No. 33 at 11 (quoting *Booker*, 644 F.3d at 23–24).

    This Court finds that Reynolds' prior conviction for assault on an elderly person sufficiently suggests that Reynolds poses a credible threat to another according to the standard articulated in *Rahimi*. 602 U.S. at 700. His prior conduct

10

resulted in bodily harm to a person over the age of sixty and exhibited Reynolds' willingness to violate the law and inflict physical harm to another, more vulnerable person. By his argument, Reynolds is essentially suggesting that courts should determine application of the statute on a case-by-case, fact-specific analysis of whether the defendant poses a credible threat because of the violence involved in the underlying felony. ECF No. 29 at 7–9. Given that restrictions on the Second Amendment rights may be imposed categorically, the application of § 922(g)(1) does not depend on whether the prior felony has been deemed violent or non-violent. *Booker,* 644 F.3d at 23. Therefore, Reynolds' argument that the statute is unconstitutional as applied to him based on his prior conviction also fails.

### 2. The Second Amendment has been restricted for convicted felons

Reynolds argues that defendants charged under felon-in-possession statutes are part of "the people" to whom the Second Amendment protects and guarantees a right to bear arms. ECF No. 29 at 9–10. The Government analogizes the restriction on Second Amendment rights to other civic rights that have historically been forfeited by individuals upon conviction of crimes. ECF No. 33 at 21.

To reiterate, the Supreme Court has made clear that prohibitions on possession of firearms, like those imposed on felons, are "presumptively lawful." *Rahimi*, 602 U.S. at 699 (holding that the Court's opinion in *Heller* "stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful'"). Recognizing that convicted felons are part of "the people" protected by the Second Amendment, the Court's analysis hinges on whether

11

the government sufficiently justifies the regulation. *Worster*, 765 F. Supp. 3d at 123. Given the reasoning explained above, this Court is satisfied that, pursuant to the *Bruen* analysis, § 922(g)(1) does not unduly burden Reynolds' constitutional right. Therefore, Reynolds' argument fails because, although felons are part of "the people," that alone does not exempt them from lawful regulations and restrictions on possession of firearms.

## IV.   CONCLUSION

To summarize, Reynolds' facial and as-applied challenges to 18 U.S.C. § 922(g)(1) as unconstitutional fail because the Government has shown that the statute is aligned with the Nation's history and tradition of firearms regulations as required under the *Bruen* analysis. 597 U.S. at 17. Second, Reynolds' claims that the dispossession is unconstitutional because it is permanent does not persuade because there is a path available to him by which he can regain his right to possess firearms. Third, Reynolds' assertions that the statute is unconstitutional because his prior conviction was not violent fails because there is nothing in the statute to indicate that its application should depend on whether the defendant's prior conviction is a violent felony. Further, even if application of the statute could depend on the level of violence of the underlying felony, Reynolds' prior conviction for assault cannot be said to be non-violent. Finally, while felons are part of "the people" referenced in the plain text of the Second Amendment, they are still subject to lawful firearms regulations such as those prohibiting possession by felons. For the reasons stated, Reynolds' Motion to Dismiss the Indictment (ECF No. 29) is DENIED.

IT IS SO ORDERED.

_____
Melissa R. DuBose
United States District Judge

11/10/2025